## LINDSAY V. PETTIGREW.

Where the record indicates a premeditated design on the part of counsel, in referring repeatedly to matters outside the case, to disregard the rulings and admonitions of the trial court, and also the decision of the supreme court rendered in the same cause on a former appeal, the judgment will be reversed.

(Opinion filed Oct. 5, 1897.)

Appeal from circuit court, Minnehaha county. Hon. J. W. JONES, Judge.

Action for damages for breach of contract. Plaintiff had judgment, from which, and from an order denying his motion for a new trial, defendant appeals. Reversed.

The facts are stated in the opinion.

*Aikens, Bailey & Voorhees,* for appellant.

The judgment should be reversed on account of the misconduct of counsel for respondent. Lindsay v. Pettigrew, 3 S. D. 199, 52 N. W. 873; Surface v. Douglas, 41 Pac. 207; Winter v. Sass, 19 Kan. 556; Huckell v. McCoy, 15 Pac. 870; Brown v. Swineford, 44 Wis. 282; Berry v. State, 10 Ga. 522.

*Joe Kirby,* for respondent.

The granting or refusing of a new trial on account of the alleged misconduct of the attorney for the prevailing party is largely a matter of discretion on the part of the trial judge, and if the alleged misconduct be stricken from the case, still, if there is evidence to warrant the verdict, the action of the trial court in refusing a new trial will not be disturbed. Burdick v. Hagart, 4 Dak. 13; Olson v. Gjertsen, 44 N. W. 306; Watson v. Railroad, 43 N. W. 904; George v. Swafford, 39 Id. 805; Battishill v. Humphrey, 38 Id. 581; Knowles v. Val Gordon. 23 Minn. 197; Handlen v. Railroad, 49 Ia. 453.

HANEY, J. In 1885, defendant resided at Flandreau, Moody county, Dak., and was engaged in business as an insurance, real estate and loan agent. The plaintiff desired to ne-

gotiate a loan upon 120 acres of land owned by him, and situated near Flandreau, and also upon certain lots in the village of Flandreau.   Defendant, at the time, was acting as agent for his sister-in-law, Mrs. Nellie D. Pettigrew, and through him plaintiff obtained a loan from her.   To secure the loan, plaintiff, on September 18, 1885, executed a mortgage upon his land and town lots, which mortgage contained a covenant to keep the mortgaged premises insured in favor of the mortgagee, in the sum of $400, in some insurance company satisfactory to her.   Up to this point there is no dispute in regard to the facts.   The further claim of plaintiff is that in adjusting with appellant the account of disbursements of the money received upon the loan, and of other matters pending between them, appellant deducted and retained five dollars for the insurance premiums, and agreed with respondent to write the insurance policies.   Defendant denies that any agreement was made by him to effect insurance, or that any moneys were retained by him for that purpose.   Upon this question the evidence is conflicting, and it is practically the one question of fact at issue in the case.   In January, 1886, the house situated upon the land covered by the mortgage was totally destroyed by fire.   In March, 1886, plaintiff brought this action, alleging that defendant had contracted with him to procure him a policy of insurance of $250 upon the building which was burned, that he had wrongfully neglected to procure such policy, and laying damages at $250, with interest, etc.   The answer of appellant set up the making of the loan with Nellie D. Pettigrew, and denied that he had ever contracted to procure the insurance.   An application was made in 1887 for a change of venue.   A change was granted to Turner county, but, on account of misunderstanding the terms of the order granting the change, it was never fully complied with, and plaintiff obtained an order sending the case back again for trial to Moody county.   In 1888 the case was tried in Moody county, and resulted in a mistrial. At the next term of court after the mistrial, a second applica-

tion was made by defendant for a change of venue. This application was denied. In March, 1891, the case was again tried in Moody county. This trial resulted in a judgment for plaintiff. Upon appeal to the supreme court the judgment was reversed by reason of the misconduct of the attorney for repondent. Lindsay v. Pettigrew, 3 S. D. 199, 52 N. W. 873. In March, 1893, a third application was made by defendant for a change of venue, which was granted, and the venue of the action was changed to Minnehaha county. In April, 1893, the case was again brought on for trial in Minnehaha county, and by direction of the court a verdict was returned in favor of the defendant. Plaintiff appealed from this decision to the supreme court, and the case was again reversed, and a new trial ordered. Lindsay v. Pettigrew, 59 N. W. 726. A petition for a rehearing was filed, and denied. Lindsay v. Pettigrew, 60 N. W. 744. In November, 1895, the case was the fourth time brought on for trial, in Minnehaha county, and the trial resulted in a verdict and judgment for the plaintiff. From this judgment, and from the order overruling his motion for a new trial, the defendant appealed to this court.

One of the statutory grounds designated in defendants notice of intention to move for a new trial is "irregularity in the proceedings of the attorney for plaintiff upon the trial, by which defendant was prevented from having a fair trial." In the opening statement of plaintiff's counsel, in examination of the jury, certain matters were referred to which were claimed to be objectionable by defendant's counsel, and the stenographer was requested to take down further remarks of counsel. "Mr. Frank R. Aikens (attorney for defendant): We except to remarks of counsel in stating to the jury, upon their examination, the result of this case upon its former trial. The Court: The objection is sustained. Go ahead with the case. Mr. Kirby (attorney for plaintiff): The objection is made for the purpose of interrupting in stating the case to the jury, and has always been tried before at this stage of the case. The

Court: Go ahead with the examination, and do not give any previous history of the case in court, or what was done in court. Mr. K.: We obtained one verdict while Judge AIKENS was sitting on the bench, and who now comes here, as I suppose he has a right to do, to try the case. Mr. A.: We except to remarks of counsel at this time in regard to what was done when I was on the bench. Mr. K.: It will not change that verdict that you·directed. Mr. A.: We except to last remark of counsel. The court: The objection is sustained, and counsel is not to go into previous history of this case, or what was· done in former trials, and I want this stopped right here. Mr. K.: I object to the attorney continually interrupting me in my statement. The Court: Now go ahead. I do not desire any further controversy here. Mr. K.: He started the interuption. I have conducted myself like a gentleman and attorney. The Court: Proceed. Mr. K.: I object to this, and I don't want this interruption to occur again, because it has been attempted in other cases. I want my statement made so the jury can understand the true condition, and I don't want this thing to go— The Court: Proceed with the case. Mr. K.: Then the venue was again changed at this time— Mr. A.: We object to the remarks of Mr. Kirby in regard to any change of venue. Mr. K.: This is the way it has been every trial I have been in here Mr. A.: I object to counsel's last remark to the jury. The Court: It don't make any difference whether the case has been tried forty times or not. Go ahead. If you can't examine the jury, I will examine them myself. Mr. K.: Go ahead your honor. The Court: I don't care to. Proceed, if you wish with the examination. If you do not examine the jury I will do so. Mr. K.: I don't want the interruption made by the two attorneys. The Court: I said to you before that it was wholly immaterial and improper to go into the history of how this case has been mistried, etc. Mr. K.: I do it only for one purpose,—so that a juror who might have known about affairs —When first asked, we all know,—so do you and anybody else

know, when you ask a man about a thing generally, saying 'Do you know anything about this case?' and he will answer 'No'; but, if you go into the details of it, probably he has heard of it, and heard it discussed, and I know this case has been talked over during five or six years, and perhaps some man who don't want to sit on the jury if he has heard it would remember about it unless it is explained to him in detail. Some of this jury might have lived in Moody county. I have not touched on the merits or demerits of this case, and— The Court: Proceed. Mr. K.: The case came for trial here on a change of venue from Moody county— (Defendant's counsel object to last remark of counsel. It is utterly improper for him to comment on any proceedings concerning the preceding trials of this case.) The Court: Let him limit it, and state only sufficient to call the jurors' attention so as to ascertain whether they know anything about the case. (Defendant excepts.) Mr. K.: Every time I have started in to make a statement to the jury, I have been interrupted, and I ask the court to stop it. And I can attend to my own business outside of the court room. The gentleman has waited every time until I have begun to tell the jury how the case came here and then interrupted me. I have a right to do it. He started in this morning with similar intent— The Court: Proceed with with the case, if you please. Mr. K.: I started three different times to remark as to how the case came here on a change of venue from Moody county. I think that was in—well, I think, about three years ago. I am not certain now. It was then Judge AIKENS was on the bench. The case is here on mistrial. (Defendants counsel objects.) The Court: Proceed. (Defendant's counsel excepts.) Mr. K.: It has been here tried, and it is here again, and some of you gentlemen have, no doubt been on the trial at these different terms, and you have probably heard about it. I think it was two or three years ago it came up for the first time, it came up again last spring; but I don't think there was a jury impaneled. (De

fendant's counsel object to counsel stating the proceedings last spring, for the reason it is improper, and for the reason the statement is also false, as shown by the records of court.) The Court: Let the counsel go ahead. Mr. K.: This is done for the purpose of seeing if he can aggravate me, and if I was to take the gentleman and thrash him it would be a— The Court: The objection is overruled. Now, go ahead. Mr. K.: The case was discussed here in court, and I think the remark of counsel is right about there being no jury impaneled. I don't think there was a jury impaneled, but the case was discussed here. That is substantially the condition of the case. I regret I have been so interrupted by the other attorneys. I will ask you gentlemen if any of you know anything about this case. The case was tried on the part of Mr. Pettigrew by Bailey & Stoddard, I think. I think Stoddard took part in the trial, and I was on the other side." Again, in argument to the jury, plaintiff's attorney made the following remarks, and the following proceedings were had: "The case, as the record will show—and you have a right to those records. This case was to the supreme court twice, and it came here on a change of venue from Moody county, Mr. Pettigrew's home formerly. The records in this case will show that Mr. Pettigrew swore it away from his own town. (Defendant's counsel except to remarks of counsel.) Mr. Kirby: We will take no chances in— The Court: Yes; objection sustained. You should not go outside of this case. Mr. K.: We except to the remarks of the court. The Court: The record is not a part of the evidence at all. This has nothing to do with the proceedings heretofore in this case. Discuss the evidence. Mr. K.: We except to the remarks of the court. The Court: I should not think you would attempt to go beyond this trial. Mr. K.: Except to the remarks of the court as improper, for the reason that it does not relate to a matter to which exception has been taken, being foreign in all matters here However, the law governing you in regard to the evidence and judgment roll and the files such

as the court see fit to go before you, I ask you gentlemen to look over them, and anything the court says you can take out as proper to be looked over in the matter. Perhaps the gentleman is right in taking exceptions in this matter. But it happens sometimes that when a man is anxious to keep something out from the jury, he usually objects. Mr. Aikens: We except to the remarks of counsel in regard to an attempt to keep out of this record what the court has decided should not be argued. Mr. K.: I want to impress upon you that anything the court allows to go out with you in this matter, I want you gentlemen to examine. They are proper matters to be considered in this case. If the court fails to send out something I think ought to go in or sends out something that ought not to go out, that is a matter of error we can protect ourselves on." In view of the character of this litigation, its history and the former decision of this court regarding the conduct of plaintiff's attorney (Lindsay v. Pettigrew, 3 S. D. 199, 52 N. W. 873), the record, which has been given at length, discloses more than the misguided zeal of an attorney unduly solicitous for the success of his client's cause. It indicates rather a premeditated design and purpose to not only disregard the rulings and admonitions of the trial court, but a disposition to intentionally disregard the decision of this court rendered in this action upon a former appeal. Comment is unnecessary. The record shows inexcusable misconduct on the part of plaintiff's attorney. Content with the reasons assigned when the conduct of the same attorney was formerly considered, the judgment of the circuit court is reversed and a new trial ordered.